1
2
3
4
5
6
7

J. SCOTT GERIEN, State Bar No. 184728
JOY L. DURAND, State Bar No. 245413
DICKENSON, PEATMAN & FOGARTY
1500 First Street, Suite 200
Napa, California 94559
Telephone: (707) 252-7122
Facsimile: (707) 255-6876

Attorneys for Plaintiff
OLD BRIDGE CELLARS

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19

Old Bridge Cellars,

Plaintiff,

vs.

Rose & Arrow, LLC,

Defendant.

CASE NO.

**COMPLAINT**

1. **Federal Unfair Competition**
2. **California Unfair Competition**
3. **California False or Misleading Statements**
4. **Common Law Trademark Infringement**
5. **Common Law Unfair Competition**
6. **Cancellation of U.S. Trademark Registration**
7. **Declaratory Judgment**

20
21
22
23

Plaintiff, Old Bridge Cellars ("OBC" or "Plaintiff"), for its complaint against Defendant, Rose & Arrow, LLC, formerly known as LM Wine Company, LLC ("R&A," "LM" or "Defendant"), alleges as follows:

<u>**NATURE OF ACTION**</u>

24
25
26
27
28

1. This is an action to redress violations of the federal Lanham Act for federal unfair competition (15 U.S.C. §1125(a)), California unfair competition (Cal. Bus. & Prof. Code §17200), the dissemination of false and misleading statements (Cal. Bus. & Prof. Code §17500) and common law trademark infringement and unfair competition, as the result

of willful and unauthorized use by Defendant of colorable imitations of Plaintiff's trademark, as more fully set forth hereinafter. Plaintiff seeks preliminary and permanent injunctive relief restraining Defendant's infringement of Plaintiff's trademark.   This action further seeks cancellation of U.S. Trademark Registration No. 6555413 (15 U.S.C. §1119) and declaratory relief under the Declaratory Judgment Act (28 U.S.C. §2201). Defendant's intentional attempt to maliciously misappropriate Plaintiff's rights in the mark that Defendant's predecessor sold to Plaintiff make this an exceptional case entitling Plaintiff to an award of its attorneys' fees and costs (15 U.S.C. § 1117(a)).

## THE PARTIES

2. Plaintiff, Old Bridge Cellars, is a California corporation with its corporate offices located at 703 Jefferson Street, Napa, California 94559.

3. Upon information and belief, Defendant, Rose & Arrow, LLC, formerly known as LM Wine Company, LLC, is an Oregon limited liability company with its corporate offices located at 531 OR-99W, Dundee, Oregon  97115.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's claim under and pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1338(a), as the claims arise under the federal Lanham Act, 15 U.S.C. §§1116-1127.  This Court also has pendent jurisdiction over all related claims herein in accordance with 28 U.S.C. §1338(b).   The Court has jurisdiction over cancellation of Defendant's trademark registration pursuant to 15 U.S.C. §1119, and the ability to issue declaratory judgment pursuant to 28 U.S.C. §2201.

5. Upon information and belief, Defendant, either directly or through its agents, transacted business in the State of California and within this judicial district, as more specifically set forth below, and expected or should reasonably have expected its acts to have consequence in the State of California and within this judicial district.

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as Defendant is doing business in this judicial district and therefore may be found in this district, and/or as a

substantial part of the events giving rise to the claims alleged herein occurred in this judicial district, and/or the infringement occurred in this judicial district.

## INTRADISTRICT ASSIGNMENT

7.  Pursuant to Civil Local Rule 3-2(c) this is an intellectual property matter which is to be assigned on a district-wide basis.

## ALLEGATIONS COMMON TO ALL CLAIMS

8.  In 2013, OBC engaged Columbia Hudson Ventures, LLC ("Columbia") and its managing member, Mark Tarlov, to produce, store and bottle premium Pinot Noir wine, and OBC and Columbia entered into a written agreement for wine production, bottling and related services.  The original agreement was subsequently amended three times to modify the terms of such agreement.

9.  In 2015, Columbia approached OBC to further renegotiate and modify the terms of the original agreement.  Columbia proposed to OBC that the payment terms of the agreement be modified so that OBC would prepay a significant portion of the price of the wine to be produced in order to assist Columbia with liquidity issues, and in exchange Columbia would assign to OBC the intellectual property rights in brands owned by Columbia.  OBC accepted such proposal, and in 2015 the parties entered an agreement whereby Columbia assigned the design trademark logo shown below to OBC.  The written assignment identified the design trademark logo as the "Rose and Arrow Art Work."

///

///

///

///

///

///

///

///

///



The above design trademark is referred to hereinafter as the "Rose & Arrow Artwork."

10. Pursuant to the renegotiated agreement, OBC licensed back the use of the "Rose & Arrow Artwork" trademark to Columbia.  Pursuant to the license agreement, the license to use the "Rose & Arrow Artwork" trademark was not exclusive to Columbia.

11. Following the renegotiated 2015 agreement, and pursuant to the quality control provisions of the license, Columbia proceeded to produce wine for OBC and Columbia utilizing the "Rose & Arrow Artwork" mark.  Below are examples of labels featuring the licensed "Rose & Arrow Artwork" mark for wine produced pursuant to the license:



12. In January of 2017, Columbia advised OBC that it intended to contribute substantially all of its assets to a new entity to be formed for purposes of securing investment in Columbia's business, and sought OBC's consent for the assignment of Columbia's obligations under the wine production agreement with OBC.  Thereafter, in May of 2017, Defendant, LM Wine Company, LLC was formed, and Defendant LM took over

COMPLAINT                                    4

Columbia's assets and obligations and began producing wine for OBC under the "Rose & Arrow Artwork" trademark license. In the Spring of 2018, OBC noticed that Defendant LM had begun to use the trade name "Rose & Arrow Estate" on labels of the licensed wine featuring the "Rose & Arrow Artwork" mark.  An example of one such label is set forth below:

 

13. Shortly thereafter in 2018, Mark Tarlov of Defendant LM, contacted OBC's President, Rob Buono, to advise him that the parties' wine production agreement was set to expire at the end of 2018.  Tarlov indicated that Defendant LM would be willing to renew the wine production agreement for an additional five years provided that in exchange OBC assigned to Defendant LM the "Rose & Arrow Artwork" trademark OBC had purchased from Columbia.  OBC was shocked by the proposal and Defendant LM's attempt to leverage the production agreement to force OBC to relinquish the "Rose & Arrow Artwork" mark which OBC had paid to acquire from LM Defendant's predecessor.

14. This proposal as offered by Defendant LM was unacceptable and was definitively rejected by OBC.  However, over the next several months the parties discussed possible business arrangements whereby OBC would assign the "Rose & Arrow Artwork" trademark to Defendant LM.

15. During this time, realizing that the "Rose & Arrow Artwork" trademark had never been registered prior to its acquisition by OBC, on October 25, 2018, OBC filed a trademark

application with the U.S. Patent and Trademark Office ("USPTO") for the "Rose & Arrow Artwork" design for use on alcohol, such application being assigned Serial No. 88169912 by the U.S. Patent and Trademark Office.  The design that was the subject of OBC's U.S. Trademark Application Serial No. 88169912 is shown below:



16. After filing U.S. Application Serial No. 88169912 for the design mark, OBC learned that on July 20, 2018, Defendant LM, shortly after being formed, had filed a U.S. trademark application for the identical design of the "Rose & Arrow Artwork" mark for wine, such trademark application being assigned Serial No. 88046462 by the USPTO.  The design that was the subject of OBC's U.S. Trademark Application Serial No. 88046462 is shown below:



COMPLAINT

6

17. Upon learning of Defendant LM's U.S. Trademark Application Serial No. 88046462 for the "Rose & Arrow Artwork" mark, OBC demanded that Defendant LM immediately abandon the application.  Claiming that the filing was a "mistake," Defendant LM complied with OBC's demand and abandoned the application in December 2018. Thereafter, OBC's U.S. Trademark Application Serial No. 88169912 for the "Rose & Arrow Artwork" design for alcohol issued to registration on December 3, 2019 under Registration No. 5,924,240.

18. At this time, Defendant LM did not disclose that it had also filed two other trademark applications for the words "ROSE & ARROW."  Upon information and belief, and as evidenced by Defendant LM's recent actions, Defendant LM did not disclose the existence of such other trademark applications for the words "ROSE & ARROW" as even then it intended to misappropriate OBC's rights in "Rose & Arrow Artwork" mark, including the verbal equivalent mark "ROSE & ARROW."

19. Over the course of the first half of 2019, Defendant LM and OBC exchanged various proposals related to the "Rose & Arrow Artwork" trademark that Columbia had assigned to OBC in 2015.  However, by Summer of 2019 it became clear that the parties would not be able to reach a mutually-acceptable agreement for OBC to assign its rights in the "Rose & Arrow Artwork" mark to Defendant LM.

20. Through its own investigation during the course of the negotiations, OBC for the first time learned that in addition to filing U.S. Trademark Application Serial No. 88046462 for the "Rose & Arrow Artwork" design trademark, Defendant LM had also filed two other federal trademark applications: a) U.S. Trademark Application Serial No. 87727217 for ROSE & ARROW ESTATE for "wine," filed on December 19, 2017 (the "'217 Application"); and, b) U.S. Trademark Application Serial No. 87727213 for ROSE AND ARROW ESTATE for "wine," filed on December 19, 2017 (the "'213 Application").

21. OBC also learned through its investigation that both of these applications had been "allowed" by the USPTO on July 10, 2018, and that  on January 3, 2019, Defendant LM

had filed a statement of use for the '217 Application claiming that Defendant LM owned and used the ROSE & ARROW ESTATE mark in commerce on April 20, 2018. OBC further learned that Registration No. 5,698,754 issued for the '217 Application for ROSE & ARROW ESTATE on March 12, 2019. OBC's investigation also disclosed that during the course of 2019 Defendant LM had filed extensions of time to allege use of the ROSE AND ARROW ESTATE mark shown in the '213 Application.

22. During the course of the negotiations between the parties, OBC further learned that Defendant LM had also filed an Articles of Amendment with the Oregon Secretary of State on May 7, 2019, changing its name from LM Wine Company, LLC to Rose & Arrow, LLC (hereinafter "Defendant R&A").

23. After negotiations between the parties broke down during the Summer of 2019, Rob Buono, President of OBC advised Mark Tarlov of Defendant R&A, that the word mark "ROSE & ARROW" was merely the verbal representation of OBC's "Rose & Arrow Artwork" design mark and that Defendant R&A's two trademark applications for ownership of the ROSE & ARROW ESTATE mark and ROSE AND ARROW ESTATE mark violated OBC's trademark rights. Mr. Buono further advised Mr. Tarlov that OBC would challenge Defendant R&A's trademark applications for the word marks. Mr. Tarlov advised Mr. Buono that Defendant R&A disagreed with OBC's position and asked why OBC would object to the applications. Mr. Buono advised Mr. Tarlov that OBC objected because Defendant R&A's asserted unlicensed use and asserted ownership of the word marks would be a counterfeit use in violation of OBC's trademark and that OBC would not allow that.

24. On August 7, 2019, OBC filed Cancellation No. 92071940 against the registration of the '217 Application for ROSE & ARROW ESTATE with the Trademark Trial and Appeal Board (the "TTAB") of the USPTO based on OBC's rights in the "Rose & Arrow Artwork" trademark. OBC did not take any action against R&A's '213 Application as the '213 Application had not yet matured to registration and there is no remedy available at USPTO against an allowed application that has not matured to registration.

25. On August 8, 2019, the TTAB served Defendant R&A with the Petition for Cancellation in Cancellation No. 92071940.   Defendant R&A did not answer the Petition for Cancellation, and the TTAB issued and served on Defendant R&A a Notice of Default on September 27, 2019.   Defendant R&A did not respond to the Notice of Default and the TTAB therefore granted the cancellation and cancelled the registration for the '217 Application for ROSE & ARROW ESTATE on November 13, 2019.

26. Following the cancellation, OBC filed U.S. Trademark Application Serial No. 88706079 on November 25, 2019, for the word mark ROSE & ARROW for alcohol.   On February 27, 2020, the USPTO suspended OBC's application for ROSE & ARROW based on R&A's remaining pending '213 Application for ROSE AND ARROW ESTATE.   The USPTO indicated that if the '213 Application for ROSE AND ARROW ESTATE became registered, it would prevent registration of OBC's ROSE & ARROW mark, and therefore USPTO suspended OBC's application.   Given Defendant R&A's default in the ROSE & ARROW ESTATE TTAB cancellation action after OBC had advised Defendant R&A of OBC's objections to the word marks, OBC assumed that with the next deadline to file a statement of use or extension of time to file the statement of use for the '213 Application for ROSE AND ARROW ESTATE, Defendant R&A would take no action and allow the '213 Application for ROSE AND ARROW ESTATE to become abandoned.   After the abandonment, OBC's application would be removed from suspension.

27. Following the 2019 cancellation of the registration for the '217 Application for ROSE & ARROW ESTATE, Defendant LM made no further affirmative claim to the name and mark ROSE & ARROW against OBC and continued to produce wine for OBC under the trademark license using the "Rose & Arrow Artwork" design mark and ROSE & ARROW ESTATE word mark.

28. Then, on March 9, 2022, OBC received an office action from USPTO removing OBC's U.S. Trademark Application Serial No. 88706079 for the mark ROSE & ARROW from suspension and issuing a full refusal to register OBC's ROSE & ARROW mark based on

the registration of Defendant R&A's '213 Application.   This created immediate confusion for OBC.

29. After receiving the office action on March 9, 2022, OBC reviewed the file history for the '213 Application and was stunned to learn that after the February 27, 2020 suspension of OBC's trademark application, rather than abandoning the '213 Application for the mark identical to the cancelled mark in the '217 Application, Defendant R&A instead continued to maintain the '213 Application for the next eighteen (18) months by filing extensions of time to allege use of the mark, all while using the mark under the license from OBC. OBC further learned that on July 9, 2021, Defendant R&A filed a statement of use claiming ownership and use of the mark ROSE & ARROW ESTATE in U.S. commerce.  Registration issued against the '213 Application on November 9, 2021.  Such duplicity clearly evidences that all along Defendant R&A had intended to misappropriate OBC's trademark rights.

30. When the USPTO checked the status of the pending '213 Application in the context of OBC's suspended trademark application for ROSE & ARROW and found that the '213 Application had registered, it issued the March 9, 2022, office action refusing OBC's Application Serial No. 88706079 for ROSE & ARROW.

31. Upon learning that Defendant R&A had not abandoned the '213 Application and had instead actively maintained the '213 Application such that the mark had become registered, OBC immediately filed Cancellation No. 92079240 against the registration on March 11, 2022 claiming likelihood of confusion and claim preclusion based on the prior cancellation of the identical mark in 2019.

32. Thereafter, on April 4, 2022, Ian Lombard of Defendant R&A contacted OBC and advised OBC that Defendant R&A owned the rights to the ROSE & ARROW ESTATE mark, and further advised OBC that "ownership of a logo has zero bearing on ownership of a word mark - in the TM world these are totally separate issues.  As my wife [Defendant R&A's counsel Kristin Cornuelle] has explained, owning a picture of a blue boat does not give ownership of the words 'Blue Boat'.  These rules are crystal clear in

the TM world.  Ergo, though you clearly own the logo, this has no relationship to the 'Rose & Arrow Estate' word mark."

33.  On April 5, 2022, counsel for OBC sent counsel for Defendant R&A a demand letter advising Defendant R&A that Defendant R&A's claim of ownership of the ROSE & ARROW ESTATE was not supported, that the word mark equivalent of the licensed "Rose & Arrow Artwork" design mark used by Defendant R&A inured to the benefit of OBC as licensor, that the word mark was owned by OBC, and that any use of the word mark by Defendant R&A outside of the license was an infringement.  OBC further advised Defendant R&A of OBC's intent to also use the ROSE & ARROW word mark given that the license was not exclusive.  A copy of OBC's letter to Defendant R&A is attached as Exhibit 1.

34. On April 25, 2022, Defendant R&A filed an Answer in Cancellation No. 92079240, and sent OBC a letter in response to OBC's April 5, 2022 letter.  In that letter, Defendant R&A maintained that it is the owner of the ROSE & ARROW ESTATE word mark and that the word mark is not subject to the license from OBC.  Defendant R&A further indicated that R&A was prepared to take action against OBC if it made any use of the ROSE & ARROW ESTATE word mark as indicated in OBC's letter.  A copy of Defendant R&A's April 25, 2022 letter is attached hereto as Exhibit 2.

35. Upon information and belief, Defendant maliciously and knowingly began use of the ROSE & ARROW ESTATE name and mark to capitalize upon the recognition of OBC's "Rose & Arrow Artwork" design mark and to unfairly compete with OBC by making this asserted unlicensed use of the ROSE & ARROW ESTATE name and mark to mislead consumers as to the origin of the wine sold under the "Rose & Arrow Artwork" design mark, thereby stealing the equity of OBC's "Rose & Arrow Artwork" design mark and avoiding Defendant's obligations pursuant to the trademark license.

36.  Defendant has asserted that it owns and uses the ROSE & ARROW ESTATE name and mark in commerce, not under the license from OBC.

37. Defendant's misappropriation of the ROSE & ARROW ESTATE name and mark and use in commerce is subsequent to the use of OBC's "Rose & Arrow Artwork" trademark, and Defendant's use of the name and mark ROSE & ARROW ESTATE as the licensee for use of "Rose & Arrow Artwork" design mark inured to the benefit of OBC.

38. The ROSE & ARROW ESTATE name and mark is confusingly similar to OBC's "Rose & Arrow Artwork" design mark given that the marks are picture/word equivalents and are used on the identical goods, namely, Oregon wine.

39. The unlicensed use of the ROSE & ARROW ESTATE name and mark by Defendant is likely to confuse consumers into believing that the ROSE & ARROW ESTATE name and mark is used with the permission of OBC and is connected with the wine featuring the "Rose & Arrow Artwork" mark, and Defendant will unjustly benefit from such unlicensed association.

40. Defendant's infringing, unlicensed use of the ROSE & ARROW ESTATE name and mark will unjustly profit the Defendant to the detriment of OBC and at no cost to Defendant.

41. Plaintiff will be further harmed as consumers will purchase the unlicensed ROSE & ARROW ESTATE wine believing it to be affiliated with, associated with, connected to, or sponsored by OBC and the wine offered under the "Rose & Arrow Artwork" mark, and thereby forego purchase of the wine offered under the "Rose & Arrow Artwork" mark, resulting in loss of sales to OBC from Defendant's unfair competition.

42. Defendant's infringing unlicensed use of the confusingly similar ROSE & ARROW ESTATE name and mark will financially harm OBC by diminishing the value of OBC's "Rose & Arrow Artwork" design mark.

43. Defendant's unlicensed use of the ROSE & ARROW ESTATE name and mark will also diminish the value of OBC's "Rose & Arrow Artwork" design mark by endangering the ability of OBC's "Rose & Arrow Artwork" design mark to serve as a unique and distinctive source indicator for OBC and OBC's goods.

44. Unless restrained by this Court, Defendant will unfairly compete with OBC by making unlicensed use of the ROSE & ARROW ESTATE name and mark, wherefore Plaintiff is without adequate remedy at law.

45. Defendant's intentional, malicious attempt to misappropriate OBC's trademark rights in violation of the trademark license makes this an exceptional case entitling OBC to attorneys' fees.

## FIRST CAUSE OF ACTION

(Federal Unfair Competition under 15 U.S.C. §1125(a))

46. The Defendant's above-averred actions constitute use in commerce of a word, name or device and false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection or association of Defendant with Plaintiff or as to the origin, sponsorship or approval of the goods offered in connection therewith in violation of 15 U.S.C. §1125(a).

## SECOND CAUSE OF ACTION

(State Unfair Competition under Cal. Bus. & Prof. Code §17200)

47. The Defendant's above-averred actions related to the unlicensed use of the ROSE & ARROW ESTATE name and mark in commerce constitute unlawful, unfair or fraudulent business acts or practices in violation of Cal. Bus. & Prof. Code §17200.

## THIRD CAUSE OF ACTION

(False or Misleading Statements under Cal. Bus. & Prof. Code §17500)

48. The Defendant's above-averred actions related to the unlicensed use of the ROSE & ARROW ESTATE mark in commerce constitute the dissemination and making of untrue or misleading statements, which by the exercise of reasonable care should have been known to be false or misleading, in violation of Cal. Bus. & Prof. Code §17500.

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FOURTH CAUSE OF ACTION**

<u>(Common Law Trademark Infringement)</u>

49. The Defendant's above-averred actions related to the unlicensed use of the ROSE & ARROW ESTATE mark in commerce constitute trademark infringement and passing off in violation of the common law of California.

**FIFTH CAUSE OF ACTION**

(Common Law Unfair Competition)

50. The Defendant's above-averred actions related to the unlicensed use of the ROSE & ARROW ESTATE mark in commerce constitute a false designation of origin in violation of the common law of California.

**SIXTH CAUSE OF ACTION**

(Cancellation of Trademark Registration)

51. U.S. Trademark Registration No. 6,555,413 for the mark ROSE & ARROW ESTATE should be cancelled as it is likely to cause confusion, mistake or to deceive the public. Defendant's mark, ROSE & ARROW ESTATE, is virtually identical to OBC's "Rose & Arrow Artwork" design mark and is used on or in connection with identical, highly related or substantially similar goods, and said products are purchased by the same group of consumers. Accordingly, Defendant's mark, ROSE & ARROW ESTATE, is confusingly similar to OBC's "Rose & Arrow Artwork" design mark such that Defendant is not entitled to continued registration of its mark and Defendant's ROSE & ARROW ESTATE Registration should be cancelled in accordance with Section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d), pursuant to this Court's authority under 15 U.S.C. §1119.

52. Defendant owned Registration No. 5,698,754 for the mark, ROSE & ARROW ESTATE, for wines in class 33. OBC filed a Petition to Cancel Registration No. 5,698,754 on August 7, 2019 (Cancellation No. 92071940). The TTAB granted Cancellation No. 92071940 on November 6, 2019, and the Commissioner cancelled Registration No. 5,698,754 on November 13, 2019. The mark ROSE & ARROW ESTATE in Registration No. 6,555,413 is identical to the ROSE & ARROW ESTATE mark in Registration No. 5,698,754, and

DICKENSON PEATMAN FOGARTY

both registrations were for the identical goods, namely, wine.   The basis for Cancellation No. 92071940 was identical to the basis for this cancellation against Registration No. 6,555,413, Section 2(d) confusing similarity with OBC's "Rose & Arrow Artwork" design mark.

53. The parties in this proceeding are identical to the parties in Cancellation No. 92071940. There was a final judgment on the merits of the Section 2(d) claim in Cancellation No. 92071940.  Accordingly, Registration No. 6,555,413 should be cancelled pursuant to claim preclusion pursuant to this Court's authority under 15 U.S.C. §1119.

54. U.S. Trademark Registration No. 6,555,413 for the mark ROSE & ARROW ESTATE should also be cancelled on the basis that Defendant did not own or exclusively use the ROSE & ARROW ESTATE mark in commerce at the time Defendant filed its Statement of Use as Defendant's use of the ROSE & ARROW ESTATE mark inured to the benefit and ownership of OBC pursuant to the parties' trademark license.   Accordingly, Registration No. 6,555,413 should be cancelled in accordance with Section 1(a) of the Trademark Act of 1946, 15 U.S.C. § 1051(a), pursuant to this Court's authority under 15 U.S.C. §1119.

## SIXTH CAUSE OF ACTION

### (Declaratory Judgment)

55. Defendant, as evidenced by the above-averred actions, and as stated in Defendant's April 25, 2022 letter, asserts ownership of the word mark ROSE & ARROW ESTATE for wine.

56. Defendant, as stated in Defendant's April 25, 2022 letter, has indicated that OBC's planned use of the word mark ROSE & ARROW ESTATE for wine would be subject to a trademark enforcement claim by Defendant as the alleged owner of word mark ROSE & ARROW ESTATE.

57. An actual, immediate, justiciable controversy exists between the parties as to the ownership and use of the word mark ROSE & ARROW ESTATE for wine.

58. OBC has been, and will continue to be damaged by the uncertainty created by Defendant's claim of exclusive ownership of the word mark ROSE & ARROW ESTATE for wine.

59. OBC seeks declaratory judgment that, as the owner of the "Rose & Arrow Artwork" design mark, use of the word mark equivalent of the licensed "Rose & Arrow Artwork" design mark, ROSE & ARROW ESTATE, by Defendant as licensee of the "Rose & Arrow Artwork" design mark, inures to the benefit of OBC as licensor, and that OBC is the owner of the ROSE & ARROW ESTATE word mark for wine, as well as all other variations of such word mark, e.g., ROSE AND ARROW.

60. Plaintiff seeks declaratory judgment that use of the mark ROSE & ARROW for wine by OBC will not infringe any rights belonging to Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, OBC requests that judgment be entered as follows:

1. As OBC makes no claim of monetary damages, and because the harm to OBC cannot remedied through monetary damages, OBC requests that Defendant, its principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, any parent and subsidiary companies, attorneys and representatives and all of those in privity with or acting under its direction and/or pursuant to its control, be preliminarily and permanently enjoined and restrained, from directly or indirectly:

   a. Using the name and mark ROSE & ARROW ESTATE, or any term or mark confusingly similar to the "Rose & Arrow Artwork" design mark, in connection with the advertisement, promotion, distribution, offering for sale or selling of alcohol beverages, or products or services related to alcohol beverages without the express permission and license of OBC;

   b. Performing any acts or using any trademarks, names, words, images or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that OBC and Defendant are one in the same or are in some way connected or that OBC is a sponsor of Defendant or that the goods of Defendant originate with OBC or are likely to lead the trade or public to associate Defendant with OBC, without the express permission or license of Plaintiff;

2.      That Defendant be required to file with the Court, and serve on OBC, a statement under oath evidencing compliance with any preliminary or permanent injunctive relief ordered by the Court within fourteen (14) days after the entry of such order of injunctive relief;

3.      That Defendant, its principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, any parent and subsidiary companies, attorneys and representatives and all of those in privity with or acting under its direction and/or pursuant to its control, be required to deliver up for destruction all advertising, promotional materials, point of sale materials, labels, caps, corks, neckers, packaging, and any other materials bearing the infringing mark together with all artwork, plates, molds, matrices and other means and materials for making and reproducing the same;

4.      That Defendant be ordered to recall infringing ROSE & ARROW ESTATE wine in the marketplace from retailers;

5.      That declaratory judgment be entered as requested in Paragraphs 59 and 60 above;

6.      That Defendant be ordered to pay OBC's attorneys' fees on the basis that this is an exceptional case;

7.      That OBC have such other and further relief as this Court shall deem just and proper on the merits.

Dated: May 27, 2022                       Respectfully submitted,

                                          DICKENSON, PEATMAN & FOGARTY

                                          By J. Scott Gerien

                                              Joy L. Durand
                                              1500 First Street, Suite 200
                                              Napa, California 94559
                                              Telephone: 707-252-7122
                                              Facsimile: 707-255-687
                                              Attorneys for Plaintiff, Old Bridge Cellars

COMPLAINT                                 17

EXHIBIT 1



J. SCOTT GERIEN
sgerien@dpf-law.com



April 5, 2022

Via Email (kcornuelle@orrick.com)

Kristin Cornuelle, Esq.
Orrick
1120 NW Couch Street
Portland, OR  97209

   **Re:**  <u>ROSE & ARROW Word Mark</u>

Dear Kristin:

   As I believe you know, we represent Old Bridge Cellars ("OBC").  As I believe you also know, OBC is the owner of the Rose & Arrow design mark which is licensed to your client Rose & Arrow, LLC fka LM Wine Company, LLC ("R&A").  I am writing concerning correspondence received yesterday morning by OBC from Mr. Ian Lombard at R&A.

   Mr. Lombard seems to believe that R&A owns the word mark ROSE & ARROW, which is of course mistaken.  What is especially surprising about the correspondence, however, is that Mr. Lombard indicates that his understanding of this is based on legal advice that he received from you.

   As Mr. Lombard correctly indicates in his correspondence, OBC "clearly" owns the Rose & Arrow design mark.  However, he then goes on to state that this has "no relationship" to the ROSE & ARROW word mark.  He states that you explained "that owning a picture of a blue boat does not give ownership of the words 'Blue Boat,'" and that you are the one that suggested that R&A could use the ROSE & ARROW word mark, and presumably own it despite the license.

   While Mr. Lombard is correct that "the rules are crystal clear in the TM world" in this regard, it appears that R&A is not clear on the actual rule.  As Professor McCarthy notes in his treatise section entitled "Similarity of meaning—Picture-word equivalency": "A picture mark and a word mark may be confusingly similar in mental impression—for example, ARROW and a picture mark of an arrow." 4 McCarthy on Trademarks and Unfair Competition § 23:27 (5th ed.).  The irony is overwhelming.

Kristin Cornuelle, Esq.
Orrick
April 5, 2022
Page 2

The license agreement very clearly includes the trade dress design that is referred to as "Rose & Arrow" and attached as Exhibit 1 to the license. The Rose & Arrow design was originally used by R&A and its predecessor with the licensed CHAPTER 24 word mark.  However, as Mr. Lombard notes, the label was transitioned to begin use of the word mark ROSE & ARROW ESTATE, the lingual equivalent of the design mark that is the subject of the license.

The case law is clear in this regard.  "[D]uring a licensing relationship, use of a mark *confusingly similar to a licensed mark* inures to the benefit of the licensor.   If a licensee wishes to create rights in a mark separate from those marks licensed to it, the licensee has an affirmative obligation to choose a mark sufficiently different from the licensed marks so that the public will not be confused into thinking the new mark belongs to the licensor. The licensee trades upon the good will of the licensor at the licensee's peril."  *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1560–61 (M.D. Fla. 1988).

Thus, R&A's adoption and use of the word mark, ROSE & ARROW ESTATE, the lingual equivalent of the "Rose & Arrow" design mark (as referenced in the license), inures to OBC's benefit as the licensor and OBC is the owner of such mark.  For so long as the license continues, A&R may continue to use the word mark, but if and when the license terminates, so will A&R's rights to use the ROSE & ARROW word mark and design mark.

R&A's perception of the situation is particularly problematic, however, as the parties previously discussed all of this in 2019.  As you know, R&A previously owned Registration No. 5698754 for ROSE & ARROW ESTATE.  OBC petitioned to cancel such registration in 2019 based on its rights in the Rose & Arrow design mark, and Mr. Lombard advised Rob Buono at OBC that R&A recognized OBC's rights in the word mark and that R&A would not defend the cancellation.  R&A defaulted, and the registration was cancelled.

Accordingly, OBC was quite surprised to recently learn that R&A continued to maintain a second trademark application for ROSE AND ARROW ESTATE following this cancellation, and that R&A last year filed a declaration of use to move such application to registration.  Obviously OBC has now petitioned to cancel this Registration No. 6555413, again based on confusing similarity with the Rose & Arrow design mark, as well as on preclusion.  We trust that R&A will similarly default in this cancellation, which will allow OBC's pending Application Serial No. 88706079 for ROSE & ARROW to move through to registration.  OBC also plans on using the ROSE & ARROW mark this summer given that the trademark license is non-exclusive.

Kristin Cornuelle, Esq.
Orrick
April 5, 2022
Page 3


       Please respond to this letter confirming R&A's understanding that the ROSE & ARROW word mark is owned by OBC as the owner and licensor of the Rose & Arrow design mark used by R&A as trademark licensee, and advise as to whether R&A intends to continue as a licensee of these marks pursuant to the parties' production agreement. We look forward to your response.


                  Sincerely,

                  DICKENSON, PEATMAN & FOGARTY

                  J. Scott Gerien


cc:  Client

EXHIBIT 2



April 25, 2022

***Via E-mail***

J. Scott Gerien
Dickenson, Peatman & Fogarty
1455 First Street
Suite 301
Napa, CA   94559

**Orrick, Herrington & Sutcliffe LLP**
222 Berkeley Street
Suite 2000
Boston, MA 02116-3740

+1 617 880 1800
**orrick.com**

**Sheryl Koval Garko**

**E** sgarko@orrick.com
**D** +1 617 880 1919
**F** +1 617 880 1801

Re:      ROSE & ARROW Word Mark

Dear Mr. Gerien:

I write in response to your April 5th letter to Kirstin Cornuelle regarding the correspondence between Ian Lombard, of Rose & Arrow, LLC, and your client Old Bridge Cellars.  Please be advised that I represent Mr. Lombard and Rose & Arrow, LLC in this matter; future correspondence regarding this matter should be directed to me.

We were disappointed by the substance of your letter and even more so by its tone.  Mr. Lombard had sent an informal e-mail to his business counterparts at Old Bridge Cellars in a good faith effort to clear up the differences that have lately arisen over the trademark issues.  Your response, addressed to Mr. Lombard's wife, was not warranted by the circumstances and is not conducive to the parties finding an amicable resolution to this matter.

Turning to the substance, we disagree with your assessment of the McCarthy's section summarizing the case law on the picture-word equivalency issue.  The cases cited in the McCarthy's section on this issue are decidedly mixed; there are cases that find likelihood of confusion and no likelihood of confusion between design marks and word marks.  However, the cases present a clear conclusion: where a design is highly stylized or has a multitude of possible definitions or interpretations, there is no likelihood of confusion.  *See, e.g.*, *Spaulding Bakeries Inc. v. Interstate Brands Corp.*, 209 U.S.P.Q. 355, 1980 WL 39044, at *1 (T.T.A.B. Dec. 22, 1980) ("[N]ot only must the pictorial representation be readily recognized by the average purchaser of the goods involved as the equivalent of a literal term, but it must be of such a nature that the purchaser would be prone to "translate" and not accept it for what it is….."); *In re Serac, Inc.*, 218 U.S.P.Q. 340, 1983 WL 51958, at *2 (T.T.A.B. Apr. 18, 1983) ("Here, the Board believes…that the design mark before us is so highly stylized that an image of a ram's head would not be immediately discerned and the connection with "RAM'S HEAD" would not be readily evoked with the resulting generation of a likelihood of source confusion.").

In this case, the underlying premise that there is a direct word-image equivalency cannot be assumed, as the design in question is an image melding multiple elements that can be described in multiple ways.  Where an image is conducive of multiple descriptions, it is not confusingly similar to a word mark that might describe an aspect of the image. *See, e.g., In re Serac,* 1983 WL 51958, at *2 (finding no likelihood of confusion where "an image of a ram's head would not be immediately discerned and the connection



J. Scott Gerien
April 25, 2022
Page 2

with RAM's HEAD would not be readily evoked" where "applicant's mark *might* be seen as suggestive of a ram, *it could as readily be viewed as suggesting or portraying a sheep or a mountain goat*….") (emphasis added); *Spaulding Bakeries,* 1980 WL 39044, at *2 (finding no likelihood of confusion between applicant's design and prior OLD MILL registration where "petitioner has not offered any evidence to indicate that customers generally would translate respondent's mark much less equate it with "OLD MILL" as distinguished from an old farmhouse or other object peculiar to farming and the farm country."). Here, it is not a foregone conclusion that purchasers would invariably use the words "rose and arrow" to describe the logo at issue. For example, the purchasing public could view the design and see any flower (not necessarily a rose) or may not even notice the pointer at the bottom of the mark (much less call it an arrow). Thus, we disagree that my client's use of the ROSE & ARROW ESTATE word mark "inures to the benefit" of your client, because there is no likelihood of confusion between the design and my client's mark.

Notably, the description of the design in the license agreement is completely irrelevant to a likelihood of confusion analysis here because the law has consistently held that similarity is assessed based on how the marks are perceived in the mind of the consumer, and not how they may be described by the parties in legal documents. *In re Serac*, 1983 WL 51958, at *2 (finding despite applicant's reference to its design mark as "ram design," "a mark's meaning is *based upon its impression of the purchasing public* and not an applicant's description…") (emphasis added).

We also disagree with your assertion that the cancellation proceeding instituted against my client's ROSE & ARROW ESTATE registration is governed by any preclusion doctrine. The prior TTAB case was not fully and fairly litigated on the merits, and so the default judgment in that case will not be afforded preclusive effect. *See, e.g., V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, Case No. 2:14-CV-02961-TLN-CKD, 2022 WL 229872, at *5 (E.D. Cal. Jan. 26, 2022) (finding issues in prior TTAB proceeding decided on default judgment were not "actually litigated because plaintiff did not substantially participate in the proceedings before the judgment was rendered") (internal quotation marks omitted). Furthermore, it is unclear to me how you and your client were "surprised" by my client continuing to pursue the ROSE & ARROW ESTATE registration; this application was filed on the same day and published for opposition on the same day as the registration you opposed, so you undoubtedly knew of its existence and opted not to take any action. Moreover, as you mention, the declaration of use was filed over a year ago, so if your client was concerned about asserting ownership of the word mark, one would have thought they would been more diligent in monitoring this application. Also, your characterization of prior statements by Mr. Lombard regarding the parties' respective rights is not accurate and ignores that your client effectively forced Mr. Lombard to not contest the prior cancellation proceeding threatening severe consequences to his then-fledgling business if he refused to do so. At no point in time did Mr. Lombard convey that he believed that Old Bridge had any rights in the ROSE & ARROW ESTATE word mark.



J. Scott Gerien
April 25, 2022
Page 3

And, to be clear, we do not agree that Old Bridge Cellars has any rights in the ROSE & ARROW ESTATE word mark and have no intention of defaulting in the cancellation proceeding your client has filed against this mark.  This mark was devised after the execution of the parties' prior agreements and is not governed by them.  The use of the mark on super-premium wines of exceptional quality has generated enormous goodwill which is indisputably the property of the producer of those wines: Mr. Lombard and Rose & Arrow, LLC.  We are prepared to take the steps necessary to defend these rights, including contesting the cancellation and, if necessary, enforcing against any use your client intends to make of the ROSE & ARROW ESTATE word mark.  Attached to the email transmitting this letter is a copy of Rose & Arrow's answer that was filed today.

As noted above, Mr. Lombard sent his email to Mr. Buono in a good faith effort to resolve this matter amicably so that the parties can focus on doing what they do best.  Mr. Lombard remains open to a fair and constructive discussion, and we understand that would be mutually beneficial for the parties to be able to continue their long-running business relationship.  He will not be bullied, however, into an unfair business arrangement, and we hope your client will take a more constructive approach going forward.

Very truly yours,

Sheryl Koval Garko